## MAINE SCHOOL ADMINISTRATIVE DISTRICT #5 et al.

### v.

## M. S. A. D. #5 TEACHERS ASSOCIATION et al.

Supreme Judicial Court of Maine.

Aug. 5, 1974.

Sanborn, Moreshead, Schade & Dawson, by Richard B. Sanborn, Augusta, for plaintiff.

Maine Teachers Ass'n, by Stuart G. Snyder, Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

This appeal presents to us for the first time the question of whether appellate review of the award of arbitrators after grievance arbitration in a municipal public employer-employee dispute is that provided in 26 M.R.S.A. § 972 (the Municipal Public Employees Labor Relations Act) or that found in 14 M.R.S.A §§ 5937–5939 (the Uniform Arbitration Act).

The Plaintiff School Administrative District (District) and the first Defendant, the Teachers Association (Association), had executed a collective bargaining agreement as they were authorized to do by 26 M.R.S.A. chapter 9–A, known as the Municipal Public Employees Labor Relations Law. The agreement contained a 4-step procedure for disposition of grievances, the final step, if the other methods failed, being submission to binding arbitration.

The second Defendant, Miss Dow, a teacher in the system, was dismissed by the Plaintiff's Board of Directors under 20 M.R.S.A. § 473 on the ground that her services were no longer profitable to the District. The Association filed a grievance on her behalf which ultimately was submitted to arbitration. On January 9, 1973 the third Defendant, Mr. McConnell, the Arbitrator,[1] delivered his award ordering that the teacher be reinstated and paid her salary from the date of her dismissal.

On January 23, 1973 the District filed this complaint in the Superior Court under M.R.C.P., Rule 80B (obviously assuming that the appropriate appellate procedure was that provided in 26 M.R.S.A. § 972, the Municipal Public Employees Labor Relations Law), asking that the award of the Arbitrator be reversed and that the dismissal be sustained or, in the alternative, that the matter be remanded to the Board.

On February 12, 1973 the Association moved to dismiss the District's 80B complaint on the ground that it failed to state a claim upon which relief could be granted. On April 6, 1973 a Justice of the Superior Court denied the Association's motion to dismiss but without deciding which of the two review procedures could be used by the District. The rationale of the Justice was that even if the District had adopted the wrong review procedure, the District's 80B appeal complaint should not be dismissed but, rather, that the District should be given opportunity to amend its 80B complaint to enable it to comply with the review requirements of the Uniform Arbitration Act. No further action has been taken in the Superior Court as to the District's complaint.

The Association then answered the 80B complaint on April 12, 1973, disputing the District's allegations as to the grievance issues, and, by counterclaim, asking that the Superior Court order the Arbitrator's award confirmed and for an entry of judgment in accordance with 14 M.R.S.A. §§ 5937 and 5940.[2]

1. The Appellants' caution in making the Arbitrator a party Defendant was unnecessary. The Arbitrator acts in a quasi-judicial capacity and need not and should not be designated a party in any procedure to modify or set aside his award.

2. 90 days had now elapsed since the Arbitrator's award was delivered during which time the District, relying on its 80B review procedure, had not filed *as such* an application for modification, vacation or correction of the award.

On July 16, 1973 the Association moved for an order confirming the Arbitrator's award. Another Justice in the Superior Court denied this motion without explanation.

It is the denial of this motion which is now before this Court on the Association's appeal.[3] The issues raised by the Association's motion were whether appellate review from the award of the Arbitrator is that provided under the Municipal Public Employees Labor Relations Act as the District assumed, or that found in the Uniform Arbitration Act, as the Association contends and—if the Association's position is correct—whether the District has initiated the review procedure authorized by the Uniform Arbitration Act.

The District asserts that such review can be had only by the 80B procedure which it has followed and that, as its 80B complaint has not yet been heard in the Superior Court, the dispute is not yet ripe for review here.

We are forced to conclude that the District has mistaken its remedy.

A brief review of statutory history is necessary. Since 1957 Maine had had a statute establishing the enforceability of a written provision in any collective bargaining contract to settle by arbitration a controversy arising out of such a contract and providing arbitration procedure and machinery for the enforcement of awards. 26 M.R.S.A. § 951 et seq. This procedure was originally used only in the private sector, because until the enactment of the Fire Fighters Arbitration Law (P.L.1965, ch. 396, 26 M.R.S.A. § 980 et seq., repealed by P.L.1969, ch. 424, § 2) in 1965 our Legislature had not authorized any of our public employees to organize and bargain collectively with their public employers. This

1965 law gave the fire fighters "all of the rights of labor other than the right to strike or engage in any work stoppage or slowdown". It particularly provided that fire fighters and municipalities may enter into contracts of employment and, if unable to agree as to the terms of a contract, they may submit disputes as to the formation of the contract to binding arbitration. Such arbitration is usually referred to as *"interests* arbitration". This law, however, was silent as to arbitration of disputes arising later out of employment under the contract which is called *"grievance* arbitration".

The Legislature then enacted P.L.1967, ch. 430 (now 14 M.R.S.A. § 5927 et seq.) entitled the Uniform Arbitration Act, which reiterated the Legislature's earlier pronouncement concerning the enforceability of collective bargaining agreements to arbitrate labor disputes and which provided machinery for grievance arbitration and enforcement of awards more complete than had previously been available.

In the meantime (before the effective date of this new Uniform Arbitration Act), the City of Rockland and its fire fighters had entered into a contract of employment under which the parties had agreed that certain types of grievance disputes should (if they arose) be submitted to binding arbitration. Such a dispute arose, was submitted to arbitration and an award was rendered in favor of the labor association which brought an application for judgment. A Justice in the Superior Court denied the application for judgment, holding that the Fire Fighters Arbitration Law had conferred upon the fire fighters a right to enter into binding arbitration only as to the formation of the labor contract— not as to grievances arising out of the employment.

---

14 M.R.S.A. §§ 5937–5939 provide that a dissatisfied party may within 90 days move the Superior Court to modify, vacate or correct an award. In the absence of such successful or pending motions, " . . . the court shall confirm the award."

3. In the meantime, the District's 80B complaint had been amended to add an attack upon the constitutionality of 26 M.R.S.A. § 961 et al., in so far as the statute provides for binding arbitration.

We sustained the Fire Fighters' appeal, ruling that the Legislature had intended the fire fighters to have all the rights of labor organizations (except those specifically withheld) and that the Legislature, in 26 M.R.S.A. § 951, had empowered *all* parties to labor agreements to agree irrevocably to submit grievance disputes to binding arbitration. The authority of the union to require the city to *comply* with its contract to arbitrate grievances was found in the 1957 labor relations statute which had extended this authority to all parties to valid labor contracts. Rockland Professional Fire Fighters Ass'n v. City of Rockland, Me., 261 A.2d 418 (1970).

In 1969 the Legislature eliminated the possible confusion which might exist with the existence of two statutes (the older 26 M.R.S.A. § 951 et seq., and the newer Uniform Arbitration Act), each providing for arbitration of labor contract grievances, by limiting the application of the older law to agreements entered into on or before October 6, 1967. P.L.1969, ch. 287, § 2. For all practical purposes the effectiveness of the 1957 law disappeared. It appears unmistakable that the 1969 Legislature intended the Uniform Arbitration Act to replace the older law and to offer its exclusive procedures for obtaining grievance arbitration under all valid labor agreements and for the enforcement of awards thus obtained.

That same Legislature also enacted the Municipal Public Employees Labor Relations Law which authorized all public employees to be represented by labor organizations and to bargain collectively "for terms and conditions of employment." P. L.1969, ch. 424, §§ 1, 2, 26 M.R.S.A. § 961 et seq. This act is fully analyzed in City of Biddeford v. Biddeford Teachers Ass'n, Me., 304 A.2d 387 (1973).

For our present purposes it is sufficient to note:

(1) Its purpose is stated to be to improve public employer-employee relationships "by providing a uniform basis for recognizing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in *collective bargaining for terms and conditions of employment*." (Emphasis added.)

(2) It repeals the Fire Fighters Arbitration Law.

(3) It provides procedures for negotiation, fact-finding, mediation and binding arbitration (in certain areas) in the making of an employment contract.

(4) It defines the duty to "bargain collectively" as requiring the parties to "meet" and ". . . confer and negotiate in good faith with respect to wages, hours, working conditions and contract grievance arbitration" and to "execute in writing any agreements arrived at".

(5) It provides for the appointment by the Governor of a Panel of Mediators and for the availability of the Mediators in aid of the settlement of disputes, with the reservation that

"[t]he services of the Panel of Mediators shall not be invoked in any dispute regarding a matter of *grievance* between the parties to an agreement, if such agreement provides for an alternate method of settlement of such *grievance* dispute." (Emphasis added.)

(6) It provides for binding arbitration of "their controversy". After discussing the selection of the arbitrators and the conduct of the hearing, the statute states that the determinations of the arbitrators ". . . will be binding on both parties and the parties will enter an agreement *or take whatever other action that may be appropriate to carry out and effectuate such binding determinations . . . .*" (Emphasis added.) The arbitrator's award will be "subject to review by the Superior Court in the manner specified by section 972".

(7) It provides procedures for the determination of a bargaining agent.

(8) It creates a Public Employees Labor Relations Board with certain powers not of interest here and with a review from their rulings to the Superior Court also "in the manner specified in section 972".

(9) The last section, section 972, contains this language:

> "Either party may seek a review by the Superior Court of a binding determination by an arbitration panel. Such review shall be sought in accordance with Rule 80B of the Rules of Civil Procedure.
>
> The binding determination of an arbitration panel or arbitrator in the absence of fraud, upon all questions of fact shall be final. . . ."

■ The issue is not entirely clear, but our analysis of the language used by the Legislature convinces us that it was intended that the parties to municipal public employees *grievance* disputes were left to the arbitration machinery provided by the Uniform Arbitration Act and to that Act's appellate review procedure as well. The statute's statement of purpose contemplates that the Municipal Public Employees Labor Relations Law is to be an aid to the *formation of an employment contract*. It defines the mutual obligations of the parties under collective bargaining in a manner which strongly suggests its purposes are limited to the processes of contract making. In fact, collective bargaining *is* contract making.[4] It repeals the Fire Fighters Arbitration Act which we held to have effect in the limited area of contract making and replaces it by giving all municipal public employees the collective bargaining rights formerly enjoyed only by the fire fighters. The provision for fact-finding and recommendations by a fact-finding panel prior to resorting to arbitration and

the authority to make the fact-finding and recommendations public appear completely inappropriate to grievance disputes and argue strongly that the machinery supplied by the statute was for the settlement of interests controversies only. Its description of the arbitration procedure contains no language particularly appropriate to the arbitration and enforcement of grievance disputes.

We find little in the language of the law which suggests an intention that one arbitration procedure was to be used by private employers and employees and another by public employers and employees. It can be argued that the reference in section 965, subd. 2, par. F to the use of the service of the Panel of Mediators in a grievance dispute is somewhat extraneous to a statute providing for labor contract making. It appears that the Legislature, while providing for mediation in contract making problems, used this opportunity to revise, in this section, the limited provisions for mediation previously found in 26 M.R.S.A. §§ 881–885. Furthermore, as we have seen, the statute (§ 965(4)) requires the parties to binding arbitration to "enter an agreement *or take whatever other action* that may be appropriate to carry out and effectuate such binding determinations." It may well be asked why, if the Legislature had reference only to binding interest arbitration, it was necessary to demand that the parties take *any* action beyond entering into the agreement. We ascribe this to the Legislature's desire to cover all possible contingencies in effectuating an interests arbitration award and not as to a reference to carrying out a grievance arbitration award.

We are satisfied that the Legislature intended only to give its approval to collective bargaining in the municipal-public sector and to set up a procedure to aid in the

---

4. It is properly defined as "Negotiation between the representatives of organized workers and their employer or employers to determine wages, hours, rules, and working conditions." The American Heritage Dictionary of the English Language 261 (1973) ; "Nego-tiation for the settlement of the terms (for example, as to wages) of a labor contract between an employer, or group of employers, on one side, and an organized body of workers on the other." Webster's New International Dictionary 525 (2d ed. 1960).

making of an employment contract. Once the parties had entered into an employment contract containing a provision to submit controversies to binding arbitration, the machinery of the Uniform Arbitration Act became available for their use, if such controversies arose.

Applying the *in pari materia* rule, as we did in *Rockland Professional Fire Fighters Association*, we feel that the Legislature intended the municipal public employers and employees to use the already established machinery for their grievance arbitration.

Having come to this conclusion, we have no doubt but that when the Legislature provided in the Municipal Public Employees Labor Relations Law that review from a binding award by arbitration should be an 80B complaint, it had reference only to awards in interest arbitration.[5]

Therefore, the District's review rights are as provided by sections 5937, 5938 and 5939 of the Uniform Arbitration Act.

These provide that a dissatisfied party may, within 90 days of the delivery to it of a copy of the award, move to vacate, modify or correct the award.[6] Under section 5937,

"Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 5938 and 5939."

■ Thus the question becomes one of whether the District's 80B complaint can be held to constitute a motion to vacate, modify or correct the award.

The full effect of the action of the first Justice in the Superior Court in denying the Association's motion to dismiss this 80B complaint is not entirely clear. He said:

"It is disputed as to whether or not the appeal is limited merely to the lesser

---

5. The scope and effect of the two types of review are considerably different.

6. "§ 5938. Vacating an award
   1. Vacating award. Upon application of a party, the court shall vacate an award where:
   A. The award was procured by corruption, fraud or other undue means;
   B. There was evidence partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
   C. The arbitrators exceeded their powers;
   D. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 5931, as to prejudice substantially the rights of a party;
   E. There was no arbitration agreement and the issue was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection; or
   F. The award was not made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court, has ordered, and the party has not waived the objection;

But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award. . . . "
"§ 5939. Modification or correction of award
   1. Application. Upon application made within 90 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:
   A. There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;
   B. The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or
   C. The award is imperfect in a matter of form, not affecting the merits of the controversy.
   2. Modification or correction of award. If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected. Otherwise, the court shall confirm the award as made.
   3. Joinder of application. An application to modify or correct an award may be joined in the alternative with an application to vacate the award."

rights of the Uniform Arbitration Act M.R.S.A., Title 14, § 5927 et al, or the appeal provisions of the Act, under Title 26 M.R.S.A. 972, which sections [sic] calls for an 80B appeal.

Without deciding the same, the Court, however finds, even if it should be an appeal, not under Title 26, § 972, but under Title 14, § 5927 et seq. . , there would be no reason to allow the Defendant's motion to dismiss. In the case of . . ., the Court clearly held a motion to dismiss is not allowable:

'This Court agrees with this position but concludes that the validity of the contention fails to require dismissal of the present proceeding. Plaintiffs are afforded leave to amend the pleadings to the extent necessary in accordance with the clear import of Rule 80B, such leave to amend is freely given to allow the proceeding "to be carried on as an ordinary civil action." '

Accordingly, the Court denies the Defendants' Motion to Dismiss." (Citation omitted.)

That decree was not ripe for appeal.

We construe the Justice's decree as indicating a willingness to permit the District to amend its 80B complaint to include, as an alternative, a motion to vacate, modify or correct the award.

No such motion to amend was filed. In fact, *after* the Justice had filed this decree, the District answered the Association's counterclaim and admitted that:

"No application is pending, under 14 M.R.S.A. sections 5938–9 [5938, 5939] which urges grounds for vacating, modifying or correcting said award."

That this was not an excusable oversight seems to be demonstrated by the fact that, in spite of the Justice's uncertainty as to the applicable statute, the District also asserted in this answer:

"And the Plaintiffs say further that this matter is under appeal under Rule 80B

and M.R.S.A. Title 26, Section 972 as has already been determined by the Superior Court and the Defendants are incorrect in their proposed procedure."

We can only conclude from the pleadings that the District had then—for the purposes of defending against the Association's motion for confirmation—rejected any recourse to the limited review provisions of the Uniform Arbitration Act. It appears to have elected to rely upon its original single contention that review of an Arbitrator's grievance award in the public sector must be had under the broader appeal provisions of the Municipal Public Employees Labor Relations Law.

This was the sole issue the pleadings presented to the Justice and upon which he made his ruling denying the Association's motion for confirmation. In this the Justice erred.

The entry will be:

Appeal sustained.

Remanded to the Superior Court for confirmation of the award.

All Justices concurring.