**SUPERINTENDING SCHOOL COMMITTEE OF the CITY OF PORTLAND**

**v.**

**PORTLAND TEACHERS' ASSOCIATION.**

Supreme Judicial Court of Maine.

May 21, 1975.

William J. O'Brien, Jr., Corp. Counsel, City of Portland, Portland, for plaintiff.

Locke, Campbell & Chapman by Frank G. Chapman, Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

This case arises as a result of unilateral actions taken by the Superintending School Committee of the City of Portland (hereinafter, School Committee), realigning the duties of certain teachers during the 1972–73 school year. In one instance, English teachers at a junior high school were assigned five daily teaching periods rather than the previously assigned four periods. In the second case the School Committee significantly increased the number of students assigned to a high school typing teacher.[1]

Grievance procedures were instituted by the Teachers' Association in accordance with the then operative collective bargaining agreement between the parties, and all steps were followed to and including binding arbitration. In each case the arbitrator's award, in substance, required the parties to meet and negotiate concerning the "impact" that the change in the number of teaching periods and the increase in the number of students per class had upon the conditions of employment.

The School Committee appealed from these awards to the Superior Court, where the cases were consolidated. It then filed a motion for summary judgment, which was granted.

The Teachers' Association has appealed from that judgment, assigning as error:

(1) The Court's failure to use the standard of review set forth in the Uniform Arbitration Act, 14 M.R.S.A. § 5938(1)(C), and

(2) The holding that neither class size nor an increase in the number of teaching periods per day are legally subject to arbitration.

We deny the appeal.

Since we are confronted with *grievance* arbitration, the appellant properly contends that the appropriate standard of review is that set forth in the Uniform Arbitration Act, 14 M.R.S.A. § 5938(1)(C), rather than the standard promulgated by the Municipal Public Employees Labor Relations Law, 26 M.R.S.A. § 972. In Maine Sch. Admin. Dist. #5 v. M.S.A.D. #5 Teach. Ass'n, 324 A.2d 308, 312 (Me. 1974), we held that

"parties to municipal public employees *grievance* disputes were left to the arbitration machinery provided by the Uniform Arbitration Act and to that Act's appellate review procedure as well."

However, the appellant assumes, incorrectly, that the lower Court applied the wrong standard of review. We read the presiding Justice's opinion as holding that

---

1. The enrollment of her five teaching classes was increased from 102 the previous year to 234 in the year in question. This latter number was later decreased to 177 students.

applying *either* standard of review the arbitration awards were erroneous and must be reversed.[2]

Thus, the only question before this Court is whether the lower Court was correct in its holding that the Uniform Arbitration Act required reversal of the arbitration awards. The applicable standard set forth in 14 M.R.S.A. § 5938 reads in pertinent part:

"1. Vacating Award. Upon application of a party, the court shall vacate an award where:

. . . . . .

C. The arbitrators exceeded their powers."

The Municipal Public Employees Labor Relations Law, 26 M.R.S.A. § 961 et seq., constitutionally empowers a school committee to enter into binding arbitration agreements in the areas of hours and working conditions and, within those areas, to make adequate provisions for contract grievance arbitration. City of Biddeford v. Biddeford Teachers Ass'n, 304 A.2d 387 (Me. 1973):

Public employers and the bargaining agent of their employees are mutually obligated:

"To confer and negotiate in good faith with respect to wages, hours, working conditions and contract grievance arbitration, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession *and except that public employers of teachers shall meet and consult but not negotiate with respect to educational policies*[.] [F]or the purpose of this paragraph, educational policies shall not include wages, hours, working

conditions or contract grievance arbitration." [3] (Emphasis supplied.)

26 M.R.S.A. § 965(1)(C).

### A

Did the arbitrator exceed his authority by ruling that increasing the numbers of students per class assigned to a high school typing teacher was an arbitrable issue and ordering that "the Committee shall negotiate with the Association over the impact the increased sizes have had upon conditions of employment"?

Article XII of the arbitration agreement, captioned "Class Size," after delineating "for many learning experiences" desirable teacher-pupil ranges, and after excluding therefrom "physical education, team teaching, large group instruction, experimental programs, and special education classes," expressly provides:

"The Association and Committee agree to study and discuss these areas in depth in an attempt to arrive at optimum teacher-pupil ratios for various learning experiences and teaching situations.

*Nothing in this Article shall be construed to be a contractual obligation on the part of the Committee.*

*This Article shall not be subject to the grievance procedure contained herein.*" (Emphasis supplied.)

■ It seems to us axiomatic that a valid contractual provision must exist which gives by its own terms a right to engage in grievance arbitration. If no such provision exists, or if the contract by its own terms excludes grievance arbitration in a particular area, any attempt to engage in

---

2. The lower Court used the following language:
    "Because a decision can be reached under the Municipal Public Employees Labor Relations Law, it is not necessary to adjudicate the same issue under the Uniform Arbitra-

tion Act. *Nothing in the latter statute would lead to a contrary decision.*" (Emphasis supplied.)

3. See 304 A.2d, n. 3 at 390.

binding grievance arbitration in that area is without binding effect.

■ As we read this particular contract, *class size* has been expressly excluded from binding arbitration by its own terms, thus depriving the arbitrator of any power to bind either party by his award. The Justice below correctly concluded, in light of the contract between the parties, that no authority existed authorizing the parties to engage in grievance arbitration in the area of "class size."[4]

### B

The parties have approached the increase of one daily teaching period for English teachers in the context of extending the "length of a teacher's working day." There is nothing in the record which indicates that the total hours spent by these teachers were extended beyond those of the usual school day, which was composed of seven periods. In prior years these teachers had four assigned teaching periods and three unassigned periods.[5]

Article XI of the contract contains the following provision:

"In the event the Committee extends the length of the teachers' *total in-school workday at any school,* the Committee agrees to *negotiate* with the Association concerning the effect of such extension on the wages, hours, and working conditions of the teachers at such school." (Emphasis supplied.)

■ Our analysis of this contractual provision, as in our previous discussion dealing with "class size," is controlling. We note that Article XI permits the parties to *negotiate* on the length of the in-school workday but contains no provision authorizing binding grievance arbitration in the event such negotiations are unsuccessful. An agreement to *negotiate* is not synonymous with an agreement to engage in grievance arbitration. We, therefore, dispose of this point, as we did the prior issue, by holding that the arbitrator lacked authority to deal with this type of grievance because the contract was silent thereon.[6]

The entry is:

Appeal denied.

All Justices concurring.

---

4. We do not now decide, nor do we intimate what our decision would be, if a contract such as the one before us contained a clause which provided for *grievance arbitration* in areas excluded from *interest arbitration* as educational policies under 26 M.R.S.A. § 965(1)(C).

5. It cannot be assumed that teachers have no duties in the periods when there are no teaching assignments. The contract includes provisions for teacher participation in such things as student make-up work, teacher conferences with parents, non-teaching supervisory responsibilities, and clerical functions.

6. It is true that we held in *City of Biddeford*, 304 A.2d at 421, "the length of the teacher's

working day must be held, fundamentally, that kind of 'educational policies' subject-matter which was legislatively intended to remain outside the scope of mandatory collective bargaining and, therefore, of binding arbitration."
However, in *City of Biddeford* we were concerned with *interest arbitration* (disputes which were involved in the making of the labor contract) and not with *grievance arbitration* (disputes which arise out of a contract already made). We reserve decision in the event that we are faced with an arbitration agreement which contains a provision for binding *grievance arbitration* in areas exempt by statute from *interest arbitration*.