**BOARD OF DIRECTORS OF MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 75**

v.

**MERRYMEETING EDUCATORS' ASSOCIATION and Florence Small.**

Supreme Judicial Court of Maine.

March 24, 1976.

Fitzgerald, Donovan & Conley, P.A. by Mark L. Haley, Daniel R. Donovan, Bath, for plaintiff.

Locke, Campbell & Chapman by Frank G. Chapman, Augusta, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

Plaintiff has appealed from the decision of the Justice of the Superior Court confirming the award of an arbitrator, which directed the renewal of the teaching contract of the defendant, Mrs. Florence Small.

We deny the appeal.

The Board of Directors of Maine School Administrative District No. 75 (the Board), in support of its appeal contends it is entitled to have the award vacated under the Uniform Arbitration Act, which authorizes a court to vacate an award where "the arbitrators exceeded their powers." 14 M.R.S.A. § 5938(1)(C).

Since the award was the result of grievance arbitration, we recognize that the Board's application to vacate the award proceeded under the appropriate statute, namely, the Uniform Arbitration Act. *Maine Sch. Admin. Dist # 5 v. M.S.A.D. # 5 Teach. Ass'n,* 324 A.2d 308 (Me.1974); *see Superintending School Com. v. Portland Teach. Ass'n,* 338 A.2d 155 (Me.1975).

The Board and Merrymeeting Educators' Association (the Association) were parties to a collective bargaining agreement. Mrs. Florence Small was a fourth grade teacher within this system and had earned the status of a continuing contract teacher as opposed to a probationary teacher.[1]

Mrs. Small was notified by the Board that her teaching contract for 1974–75 would not be renewed. Deeming this non-renewal of the teaching contract to be an arbitrable grievance, the various steps for the resolution of grievances specified in the arbitration contract were then followed, to and including binding arbitration. The arbitrator determined that the Board had acted without just cause in not renewing the teaching contract, thus violating the then existing collective bargaining agreement. He directed the Board to renew Mrs. Small's teaching contract for the school year 1974–75. This litigation ensued.

The Board now contends that the arbitrator exceeded his authority because, it argues, "he has not construed the terms of the contract or even the essence of the contract but has dispensed his own brand of justice and has acted *ultra vires*."

The Association and Mrs. Small, on the other hand, argue that the arbitrator stayed properly within the confines of the arbitration agreement and, therefore, acted pursuant to his delegated authority.

The litigants agree that the right of a continuing contract teacher to engage in binding arbitration when renewal of the teaching contract is denied is a proper subject of grievance arbitration.

20 M.R.S.A. § 161(5) mandates the continuation of teacher contracts for those who have served a probationary period.[2] Educational policy in the area of continuing teacher contracts has thus been established by act of the legislature and becomes binding upon all public employers of certified teachers. However, the *nonrenewal* of the contract of a continuing contract teacher poses an entirely different problem. Empirical facts must exist in each particular case to justify the non-renewal of such a contract. Otherwise stated, public employers of teachers could well adopt as educational policy a probationary period in a given school system of less than three years, and such a policy would not be subject to interest arbitration. 26 M.R.S.A. § 965(1)(C); *City of Biddeford v. Biddeford Teachers Ass'n*, 304 A.2d 387 (Me. 1973). However, the same policy considerations do not relate to a refusal to renew a non-probationary teacher's contract since in that situation the issue becomes not one of general policy but whether just cause exists in the individual case to terminate the relationship.

Initially, we should make it clear that we are not here concerned with the issue that might arise where an arbitrator construes a contract otherwise than the court would construe it. Rather, our concern is whether the arbitrator went beyond the terms of the contract to reach the announced result.

■ We do not reach the problem that might arise in delineating an appellate court's prerogative to interpret the meaning of specific terms in a collective bargaining agreement. We acknowledge that the interpretation of collective bargaining agreements and the meaning to be applied to specific terms therein are ordinarily the responsibility of the arbitrator. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960). However, we view this generality to be subject to the caveat that arbitrators may not travel outside the agreement in reaching a conclusion since, if they did so, they would not be interpreting and applying the contract

---

1. 20 M.R.S.A. § 161(5).

2. The right to a continuing teaching contract is acquired after serving a probationary period not to exceed three years.

but basing their conclusion on their own individual concept of justice in the particular area involved.

■ If an arbitrator did thus go beyond the terms of an agreement, his conclusion becomes subject to appellate scrutiny since he would have exceeded his power and violated the provisions of 14 M.R.S.A. § 5938(1)(C). We adopted this approach in vacating an arbitrator's award in *Superintending School Com. v. Portland Teach. Ass'n, supra*, when we determined that the grievance there sought to be arbitrated was not included in the contract as being subject to grievance arbitration.

Having in mind the purpose of our review and having determined that the failure of the Board to renew Mrs. Small's teaching contract was subject to grievance arbitration, we must now determine whether the arbitrator went beyond the contract in reaching his conclusion. Of necessity this requires us to consider the terms of the arbitration agreement and we excerpt certain language therefrom for purposes of this analysis.

Article III (B)(1):

"B.  PURPOSE

1.  The purpose of this procedure is to secure, at the lowest level possible, *equitable* solutions to problems which from time to time may arise affecting the welfare or terms and conditions of employment of teachers." (Emphasis supplied.)

Article III (D) Formal Procedure:

"4.  Level 4–Impartial Arbitration

.     .     .     .     .     .

(E) . . .  The arbitrator shall be without power or authority to make any decision which require [sic] the commission of any act prohibited by law or which is violative of the terms of this Agreement. The decision of the arbitrator shall be submitted to the Board and the Association and shall be final and binding on the parties."

Article IV Teachers Rights:

"A.  No teacher shall be disciplined, reprimanded, reduced in rank or compensation, or *deprived of any professional advantage including non-renewal of contracts* or dismissal *without just cause*. Any such action asserted by the Board, or any agent or representative thereof, shall be subject to the grievance procedure herein set forth before such action shall become final." (Emphasis supplied.)

Article XII of the contract, captioned "Teachers Evaluation" contains thirteen paragraphs dealing both with continuing contract and probationary teachers. Provision is broadly made for the evaluation of teachers' performance by qualified people, the inclusion of evaluation reports in the personnel files, and the right of all teachers to know the content of such reports at all times.

Turning to the facts as found by the arbitrator, during the school year 1972–73 Mrs. Small was subject to several evaluations, one of which resulted in the following recommendation:

"If Mrs. Small is to continue teaching, the Administration will need to provide experiences that will acquaint her with acceptable teaching practices and help her implement these training strategies in her classroom."

Subsequently, on June 18, 1973, Mrs. Small received this communication from the superintendent of schools:

"Your performance as a teacher must improve dramatically if you are to continue. I recommend that you visit other teachers early next fall and that you be visited frequently by the building principal."

Mrs. Small received a contract for the year 1973–74 and, acting pursuant to the recommendation of the superintendent, at the beginning of the new year she approached her building principal who

refused to comply with the suggestion of the superintendent. The arbitrator determined "she was told [by the principal] essentially to do it on her own." The principal testified that, although asked by the superintendent to assist Mrs. Small, he had forgotten this request when he refused to give assistance. Mrs. Small was subsequently notified that she would not be given a contract for the school year 1974-75.

Faced with this factual background, the arbitrator concluded that the decision to terminate Mrs. Small's teaching contract was arrived at without just cause. He reasoned:

"The just cause standard . . . implies that a teacher will be given a fair opportunity to demonstrate her capabilities, and that only after such opportunity will a teacher's contract be non-renewed where there is good and sufficient cause for doing so. Fundamental fairness in this case requires that where the forces have been set in motion to determine what ought to be done about a particular teacher's performance, the administration has the duty to follow through on the recommendations made where the teacher evidences a willingness to follow through on her side."

■ We believe the arbitrator stayed within the four corners of the arbitration agreement. To argue, as the Board has, that the evaluation article placed no reciprocal responsibility upon it flies in the face of the purpose of this agreement, namely, that the grievance procedure result in equitable solutions to arbitrable grievances. As we see it, these parties contemplated that teacher evaluation should serve a dual

purpose. Not only will the teacher benefit by having teaching deficiencies recognized but the school system will be stronger if these weaknesses are corrected. Under the contract both the teacher and the administration have assumed mutual obligations to strive to attain that end.

Mrs. Small had spent eight years in this school system and it was reasonable for the arbitrator to conclude that the equitable solution to the problems could best be met if the cooperative effort outlined in the letter of June 18 be consummated. Since the Board failed to provide the atmosphere which both its evaluators and the superintendent considered necessary, Mrs. Small was deprived of the requisite assistance to improve her professional performance. A dismissal without affording this opportunity would lack just cause. This was the rationale correctly adopted by the arbitrator in construing his authority under the terms of the contract.

Since our interpretation of the contract coincides with that of the arbitrator, it is unnecessary for us to decide what our position would be were it otherwise. *See United Steelworkers of America v. Enterprise Wheel and Car Corp., supra.* The finding of the arbitrator in this case manifests a fidelity to his obligation of staying within the collective bargaining agreement.

The entry is:

Appeal denied.[3]

All Justices concurring.

DELAHANTY, J., sat at argument but did not participate further in the case.

---

3. The result here announced, and the supporting rationale, should not be construed as indicating what our opinion would be if a superintending school committee or school directors, purporting to act pursuant to 20 M.R.S.A. § 473(4), should dismiss a certified teacher on the ground that either the teacher had been proven "unfit to teach" or whose services were no longer deemed "profitable to the school."