Elaine PERKINS, Plaintiff-Appellant,

v.

The BOARD OF DIRECTORS OF SCHOOL ADMINISTRATIVE DISTRICT NO. 13 et al., Defendant-Appellee.

No. 82–1094.

United States Court of Appeals, First Circuit.

Argued June 10, 1982.

Decided Aug. 13, 1982.

Stephen P. Sunenblick, Portland, Me., with whom Sunenblick, Fontaine & Reben, Portland, Me., was on brief, for appellant.

Hugh G. E. MacMahon, Portland, Me., with whom Harry R. Pringle and Drummond, Woodsum, Plimpton & MacMahon, P. A., Portland, Me., were on brief, for appellees.

Before COFFIN, Chief Judge, BREYER, Circuit Judge, ROSENN,* Senior Circuit Judge.

ROSENN, Circuit Judge.

Elaine Perkins, a home economics teacher under a one year continuing contract,[1] brought suit under 42 U.S.C. § 1983 (Supp. IV 1980) alleging that in failing to renew

---

* Of the Third Circuit, sitting by designation.

1. Maine legislatures have from time to time rejected teacher tenure bills. *See infra* note 9. However, in 1951 the 95th Maine legislature enacted a provision for automatic annual renewal of a teacher's contract unless six months' notice to the contrary is given. The legislative debate referred to this type of agreement as a "continuing contract."

her contract defendants [2] had deprived her of constitutionally protected property and liberty interests without due process of law.[3] Plaintiff appeals from the dismissal of her action, alleging error in the district court's conclusion that she had no constitutionally protected property interest in renewal of her contract and in its further conclusion that even had plaintiff had such an interest, due process was provided. *Perkins v. Board of Directors of School Administrative District No. 13*, 528 F.Supp. 1313 (D.Me.1981). Under our analysis, we need not reach the second issue. Otherwise, we affirm.

## I.

Plaintiff had been employed by School Administrative District No. 13 in Bingham, Maine, as a full-time home economics teacher from September 1964 until the end of the 1974–75 school year, but because of budgetary constraints and the declining number of students enrolled in her classes, plaintiff's position had been reduced to half-time for the 1975–76 school year.

In June 1975 defendant Hurlburt became superintendent of the District's schools. The status of plaintiff's half-time home economics position commanded his early attention. The district court found that on investigation Hurlburt became concerned over low enrollments in plaintiff's classes

**2.** Perkins sued the Board of Directors of Maine School Administrative District No. 13 (the Board), certain members of the Board in their official capacities, and the chairman of the Board, Reginald McCollor, and the superintendent of schools, Paul Hurlburt, in their official and individual capacities. Before trial plaintiff Perkins dismissed as a defendant John Morrison, principal of the high school at which she had been employed.

**3.** Plaintiff further alleged that the Board's nonrenewal decision was arbitrary and capricious and for that reason denied her substantive due process, and that her contract was nonrenewed because of her exercise of her first amendment right of free speech. The district court held that plaintiff had "not made even a colorable showing" of these allegations. *Perkins v. Board of Directors of School Admin. Dist. No. 13*, 528 F.Supp. 1313, 1319 n.14 (D.Me.1981). We agree.

and the termination of the federal subsidy for the home economics program for the 1975–76 school year "because of the low enrollments and other deficiencies in the program." *Perkins, supra*, 528 F.Supp. at 1315. Between September 1975 and the end of February 1976 Morrison and Hurlburt each observed plaintiff teach on a number of occasions and discussed with her the problems with the program and her teaching performance. On December 10, 1975, after further expression to her of their concerns they informed Perkins that Hurlburt would not recommend renewal of her contract unless her performance improved. On January 7, 1976, Morrison wrote to plaintiff and pointed to various areas in which she would have to improve. When plaintiff asked Morrison for further details, he and Hurlburt met with her on January 16 and Morrison also responded by a letter of January 19, which specifically cited as one example of plaintiff's failure to take responsibility her utter disregard of recommendations made by state officials for improving her program.[4]

On January 30, 1976, Morrison completed an annual evaluation of the plaintiff in which he noted recent improvement and recommended contract renewal. The district court found that "[b]ecause Morrison's recommendation was based on only one good classroom observation, Hurlburt asked Morrison to review all his evaluations to see

**4.** When Hurlburt discovered that plaintiff was making public Morrison's January 19 letter he called a special board meeting (attended by plaintiff), at which, in addition to informing the Board of the letter's content, he discussed his concerns about her teaching performance. This incident, another which culminated in the administration's request that plaintiff not discuss school policy with students, a warning from Chairman McCollor that plaintiff's exchange of correspondence with her principal was contributing to discord, and a request from Morrison that plaintiff refrain from discussing union business on school time, formed the bases for plaintiff's first amendment claim. The district court correctly found, however, that constitutionally impermissible reasons were not the basis for the Board's decision not to renew plaintiff's contract.

if he still felt plaintiff's contract should be renewed." *Perkins, supra,* 528 F.Supp. at 1316. Morrison, at the Board's meeting of February 25, 1976, reversed his position and recommended that plaintiff's contract not be renewed.

On February 19, 1976, Hurlburt completed an evaluation in which he commented on plaintiff's defensiveness, lack of initiative in improving her program and lack of self-control "whenever she is questioned." He stated that despite her good background in her subject plaintiff did not present the material effectively. He recommended nonrenewal of her contract for the 1976–77 school year.

On February 25, 1976, when the Board met in executive session for its annual evaluation review of all continuing contract teachers, it accepted Hurlburt's recommendation. Plaintiff attended this meeting but was not allowed to bring a representative.[5] As was required by Me.Rev.Stat.Ann. tit. 20, § 161(5) (1964 & Supp. 1981–82) the Board notified plaintiff by letter of February 26, 1976, of its decision not to renew her contract; and, as was required by the collective bargaining agreement, the Board provided her with written reasons for the nonrenewal.

Plaintiff thereupon requested and received a hearing before the Board in accordance with section 161(5).[6] McCollor, chairman of the Board, presided, assisted by the Board's attorney, and plaintiff was represented by her attorney and union representative. Although plaintiff requested an open hearing, the Board voted for a closed hearing. After deliberations in executive session the Board informed plaintiff by letter of May 21, 1976, that it had voted not to renew her contract based on its findings which supported the reasons for nonrenewal given in the February 26, 1976 letter.[7]

## II.

Plaintiff argues that she had a constitutionally protected property interest in her contract renewal and that, therefore, she can bring a section 1983 suit alleging deprivation of property without procedural due process. A public employee has a constitutionally protected interest in continued employment where he has a reasonable expectation, arising out of state statute, rules or the contract, that he will continue to be employed. *See Bleeker v. Dukakis,* 665 F.2d 401 (1st Cir. 1981); *Beitzell v. Jeffrey,* 643 F.2d 870, 873–77 (1st Cir. 1981). Thus, ordinarily, one who can be removed only for "cause" has a constitutionally protected "property" interest, while one whose job is held "at will" does not. *See Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Bleeker v. Dukakis, supra; Ventetuolo v. Burke,* 596 F.2d 476, 481

---

**5.** This meeting and the initial decision not to renew plaintiff's contract are apparently the bases for plaintiff's substantive due process claim that defendants violated the established evaluation procedures by failing to have one evaluator judge her on the basis of objective criteria and by failing to provide her an opportunity to improve after the formal annual evaluation was completed, and violated the operative collective bargaining agreement and state statutes by failing to allow her to be represented at the February 25 meeting and to be present during the Board's deliberations. Even were this court to recognize substantive due process rights of the type plaintiff is asserting, *cf. Jiminez v. Almodovar,* 650 F.2d 363, 370 (1st Cir. 1981) (declining to decide whether violations of a university's own procedural regulations constitute deprivations of substantive due process), plaintiff's claim would fail on our determination that she had no constitutionally protected property right.

**6.** *See infra* note 9 for the pertinent portions of § 161(5).

**7.** The Board found lack of adequate planning resulting in ineffective teaching, insubordinate attitude and abusive language, and unwillingness to work with the administration.

Plaintiff lists twelve procedural protections allegedly required by due process which she claims were denied her. Her primary claim, however, is that she did not receive a hearing before an impartial tribunal because the Board had voted not to renew her contract in February before the May hearing. Essentially, then, plaintiff claims that the scheme set out by the state legislature in § 161(5) is unconstitutional. We do not address this contention because we conclude that plaintiff did not have a property interest, the taking of which would implicate constitutionally mandated procedural protections.

(1st Cir. 1979). In this case, whether or not appellant's interest in her job rises to the level of constitutionally protected "property" depends upon whether the School Board could dismiss her only for "cause"—an issue of state law. *Bishop v. Wood, supra; Hagopian v. Trefrey*, 639 F.2d 52, 53 (1st Cir.), *cert. denied*, 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981).

The district court, interpreting state law in this case, held that it did not create the requisite "property" interest. Normally "we are reluctant to interfere with a reasonable construction of state law made by a district judge, sitting in a state, who is familiar with that state's law and practices." *Rose v. Nashua Board of Education*, 679 F.2d 279, 281 (1st Cir. 1982); *Berrios Rivera v. British Ropes, Ltd.*, 575 F.2d 966, 970 (1st Cir. 1978). *Cf. Bishop v. Wood*, 426 U.S. 341, 346–47 & n.10, 96 S.Ct. 2074, 2078 & n.10, 48 L.Ed.2d 684, supra (1976). In light of the fact that appellant argues error at length, and with great forcefulness, and that she claims the point is of general importance, we have carried out an independent investigation of state law. Our investigation confirms that the district court was correct.

■ Plaintiff maintains that section 161(5) establishes the requisite property right in continued employment by providing for nonrenewal only for cause.[8] Section 161(5) does not, however, by its language require cause for the nonrenewal of contracts of continuing contract teachers. The provision simply states that agreements of continuing contract teachers are to be automatically renewed absent notification to the teacher to the contrary six months before the contract terminates, and requires the school committee or board, upon request, to provide a hearing and reasons for the decision not to renew.[9]

■ Plaintiff argues that although by its language the section does not require cause

---

**8.** Property interests in continued employment may be created either by statute, by contract, *Bishop v. Wood, supra*, 426 U.S. at 344, 96 S.Ct. at 2077, or by existence of a de facto tenure policy. *Perry v. Sindermann*, 408 U.S. 593, 599–603, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972); *Ventetuolo v. Burke, supra*, 596 F.2d at 480; *Willens v. University of Mass.*, 570 F.2d 403, 404 (1st Cir. 1978). Plaintiff rests her property interest claim on the first two sources.

Plaintiff's contract claim requires little discussion. She states that her contract reveals her property interest in two respects: (1) it states that it may only be terminated for cause as provided by statute, and (2) it incorporates Board policies including the applicable evaluation policy. Defendants undermine plaintiff's argument by pointing out that the same information appeared in plaintiff's contract when she was merely a probationary teacher and that the alleged violation of the evaluation procedure does not present a federal question absent a demonstration that the procedure created a de facto tenure policy. Plaintiff does not challenge the district court's finding that there was no evidence to support the existence of a de facto policy.

**9.** The relevant portion of the provision reads:

§ 161. Powers and duties of superintendents

A superintendent of schools shall have the following powers and duties:

\* \* \* \* \* \*

5. . . . He shall nominate all teachers, subject to such regulations governing salaries and the qualifications of teachers as the school committee or school directors shall make, and upon the approval of nominations by said committee or directors, he may employ teachers so nominated and approved for such terms as he may deem proper, subject to the approval of the school committee or school directors. After a probationary period of not to exceed 2 years, subsequent contracts of duly certified teachers shall be not for less than 2 years. Unless a duly certified teacher receives written notice to the contrary at least 6 months before the terminal date of the contract, the contract shall be extended automatically, for one year and similarly in subsequent years although the right to an extension for a longer period of time through a new contract is specifically reserved to the contracting parties. . . . After a probationary period of 2 years, any teacher, who receives notice in accordance with this section that his contract is not going to be renewed, may during the 15 days following such notification request a hearing with the school committee or governing board. He may request reasons. The hearing shall be private except by mutual consent and except that either or both parties may be represented by counsel. Such hearing must be granted within 30 days of the receipt of the teacher's request.

Me.Rev.Stat.Ann. tit. 20, § 161(5) (1964 & Supp. 1981–82).

for nonrenewal, the 1959 amendment to 161(5), which added the right to a hearing and reasons, impliedly added a "for cause" requirement. The 1959 amendment does not persuade us that the state legislature intended a "for cause" requirement which is not expressly stated in the language of the statute. For if the 1959 Maine legislature had intended to provide that contracts would be nonrenewed only for cause, it could have drafted such a provision, as it had done previously. In 1941 and 1951 teacher tenure bills providing for termination only for cause were defeated.[10] The debates on the 1941 bill reveal that the idea of indefinite tenure or removal only for cause for teachers which was ultimately rejected was a matter of great controversy. In the discussion of another 1951 bill, which was enacted and which became the notice of nonrenewal provision of the present section 161(5), tenure was again an issue, and it was made clear in the house debates that the bill was not a tenure bill.[11]

The sparse legislative history on the 1959 amendment,[12] which provided for a hearing and reasons on request, as contrasted with the debates stirred by tenure in 1941 and 1951, cuts against plaintiff's argument that the 1959 amendment implemented tenure or cause for nonrenewal. Because the idea of tenure or cause for nonrenewal had aroused such controversy in 1941 and 1951, it seems unlikely that the 1959 amendment would have passed without discussion had it enacted such a requirement. Further undercutting plaintiff's interpretation is a bill introduced in 1969 but never enacted which contained, among others, a provision stating, "No teacher including a probationary teacher may be dismissed during a school year nor any continuing teacher be denied a contract offer, except for cause," which was followed by an enumeration of causes.[13]

Such wording seems inconsistent with a general for cause requirement which plaintiff argues had been in existence since 1959.

This court has recognized that a requirement for hearing and reasons on termination of employment does not mean that the reasons stated must be sufficient to constitute legal cause. In *Hagopian v. Trefrey,* 639 F.2d 52 (1st Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981), in which a Massachusetts town manager sought to bring a section 1983 suit, this court held that he had no property interest in his continued employment. Under Massachusetts law, the court noted, entitlement of an employee to a hearing and reasons for dismissal does not mean that the reasons must constitute legally sufficient cause or even that they must be true. The two purposes it found in the requirement for reasons and hearing were: (1) to identify promptly invalid reasons, and (2) to give the employee an opportunity, if he believes the reasons proffered were unsupported, to put his case to the public through a hearing.

In the instant case we find no reason to infer from the 1959 amendment providing for a hearing and reasons on request, a requirement that the reasons constitute legal cause, especially in view of the legislature's refusal to enact cause for nonrenewal legislation in 1941, 1951, and 1969. The hearing and reasons provide an opportunity for the teacher facing nonrenewal to persuade the school committee or board that the contract should be renewed. The articulation of reasons by the committee or board also deters arbitrary or capricious action.

In addition to the 1959 amendment, plaintiff relies on dicta from Maine's highest court to support her contention that section 161(5) confers a property interest in her

10. *See* Legis.Doc.No. 896, 95th Legis. (1951) and [1951] Me.Legis.Rec. 1006; Legis.Doc.Nos. 506, 1095, 90th Legis. (1941) and [1941] Me. Legis.Rec. 702, 900–09, 1051–52, 1093–1107, 1137, 1219, 1333, 1365.

11. *See* Legis.Doc.No. 1216 with Committee and House Amendments, 95th Legis. (1951) and [1951] Me.Legis.Rec. 668–72.

12. *See* Legis.Doc.No. 260, with Committee Amendment "A," 99th Legis. (1959) and [1959] Me.Legis.Rec. 112, 142, 972, 997, 1046, 1102, 1192, 1211.

13. *See* Legis.Doc.No. 272, 104th Legis. (1969) and [1969] Me.Legis.Rec. 2043.

continued employment. In *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir. 1981), the Third Circuit explored the weight to be accorded dicta of a state supreme court by a federal court in a diversity action governed by state law:

> In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide.

*Id.* at 1167. *Accord Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980).

In the cases cited by plaintiff, the Supreme Judicial Court of Maine has not specifically considered whether section 161(5) contains a legal cause for nonrenewal requirement. Plaintiff argues, however, that in *Lovejoy v. Grant*, Me., 434 A.2d 45 (1981), the Maine Supreme Judicial Court specifically held that section 161(5) conferred on teachers under a continuing contract a property interest in continued employment. We disagree. In *Lovejoy*, a teacher hired under a federally funded program, CETA, alleged that an implied contract with the school district gave her a property right in her continued employment. In reversing a summary judgment entered by the trial court for defendants on the ground that plaintiff had failed to administratively exhaust her CETA remedies and that she did not have a property right in her employment, the court indicated that the teacher might be protected by section 473(4), which restricts dismissals during the term of a

contract. Me.Rev.Stat.Ann. tit. 20, § 473(4) (1965). Although the court made a passing reference to section 161(5) upon which Perkins has seized,[14] it concluded that as a probationary teacher the plaintiff had no rights under that section. We read the court's dicta pertaining to section 161(5) as stating only that a continuing contract teacher has a right to notice on nonrenewal, hearing and reasons on request, and good faith on the part of the board.

Plaintiff also relies on dicta in *Board of Directors of Maine School Administrative District No. 75 v. Merrymeeting Educators' Association*, Me., 354 A.2d 169 (1976). In *Merrymeeting*, the School Board and the Association were parties to a collective bargaining agreement which specifically provided that a teacher's contract could not be nonrenewed "without just cause." The court initially determined that an arbitrator who entertained a grievance based on a nonrenewal decision did not intrude into state educational policy because a nonrenewal decision is not, as is, for example, the determination of the length of the probationary period set by section 161(5), a matter of general educational policy. This is so, reasoned the court, because "[e]mpirical facts must exist in each particular case to justify the non-renewal." 354 A.2d at 170. Perkins reads this language as a determination that section 161(5) requires facts which justify nonrenewal decisions. Because the collective bargaining agreement required "just cause" for nonrenewal, however, the necessity for legal cause for nonrenewal was not at issue. Thus, *Merrymeeting* cannot be read as a considered determination that section 161(5) contains such a requirement.[15] These and other cases cited by

---

14. The dicta on which Perkins relies is:
   Maine law does provide that certain public school teachers may be discharged only for cause. Under 20 M.R.S.A. § 161(5) tenured teachers are entitled to certain procedural and substantive protections concerning nonrenewal of their contracts. 20 M.R.S.A. § 473(4), quoted above, restricts the grounds on which "any teacher" may be discharged in the course of a contract.
   434 A.2d at 50.

15. Plaintiff's reliance on *Superintending School Comm. v. Winslow Educ. Assoc.*, Me., 363 A.2d 229 (1976), is misplaced. The court reversed an interest arbitration decision which had directed inclusion of a provision requiring just cause for discipline, demotion, dismissal, or nonrenewal and providing for grievance arbitration of any such actions. It held that "the school committee cannot be forced by interest arbitration to accept the 'just cause' and arbitration provisions in the 1973–1974 collective bargaining agreement." 363 A.2d at 234. (The

plaintiff referring to continuing contract teachers as "tenured," simply do not address the issue of whether a legal cause or other substantive standard must be used by a board in making a nonrenewal determination.[16]

Further support for the conclusion reached by the district court is found in decisions of the Supreme Judicial Court of Maine which have interpreted 161(5) narrowly in recognition of the legislature's intent to vest responsibility over teacher selections with the superintendents and school committees or boards. In *Paradis v. School Administrative District No. 33,* Me., 446 A.2d 46 (1982), for example, the court refused to limit the board's discretion under the portion of section 161(5) which reserves the right of boards or committees to dismiss teachers on 90 days' notice when teaching positions are eliminated. *See also Board of Directors of Maine School Administrative District No. 36 v. Maine School Administrative District No. 36 Teachers Association,* Me., 428 A.2d 419, 422 (1981) (striking down a contract provision which conflicted with section 161(5)'s "legislative intent to reserve to the school board and superintendent responsibility for filling teaching positions").

*Paradis* is instructive not only for its emphasis on the duty of school superintendents and boards or committees to select and retain the best possible teachers—which cautions against reading into section 161(5) a provision which would limit their discretion—but also for what it has to say about the nonrenewal procedures of section 161(5) which are at issue here. Just as plaintiff here tries to infer from those procedures a tenure or nonrenewal only for cause principle, Paradis tried to infer from them a seniority principle which would require termination of probationary teachers before termination of continuing contract teachers who taught the same material when local conditions warranted a reduction in the number of teaching positions. In rejecting Paradis' claim the court noted:

> By its terms . . . section 161(5) offers no support for such a seniority principle. That statute sets forth the distinction in treatment between the two sets of teachers by specifying the stringent procedures administrators must follow in terminating a continuing contract teacher, procedures which are not applicable to the termination of a probationary teacher.

*Paradis, supra,* at 50. The court refused to imply from the different procedures used on termination "a substantive provision . . . that [was] conspicuously absent from the legislative enactment." *Id.* at 50 (footnote omitted).[17] There is an implied right to have the board act in good faith, according to the court, which requires only that the board have retained the best of the teachers involved "without regard to their continuing contract or probationary status." *Id.* at 51.

The refusal of the Supreme Judicial Court to find in the nonrenewal procedures

---

16. Plaintiff also cites an unreported opinion, *Banks v. Briggs,* No. 74–65 (D.Me. Mar. 31, 1975), of the same federal district judge who decided against her at trial. In *Briggs,* however, no procedural due process claim was being made and the court simply accepted, without discussion, that plaintiff was tenured and as such "entitled to continued employment unless sufficient 'cause' for nonrenewal of his contract [was] shown." Typescript op. at 8.

17. The court noted that the 1941 and 1951 bills which were defeated would have given continuing contract teachers the type of preference Paradis was seeking. *Paradis, supra,* at 50 n.7.

*Winslow* case apparently prompted the 1976 amendment to 161(5) which permits just cause for dismissal or nonrenewal of nonprobationary teachers as a negotiable item in collective bargaining. *See* Me.Rev.Stat.Ann. tit. 20, § 161(5) (1964 & Supp.1981–82).) In rejecting the union's argument that a nonrenewal decision is purely procedural and that therefore interest arbitration in the area would not intrude into educational policy, the court quoted an Illinois opinion which stated that whether just cause exists for dismissal is not a procedural determination but goes to the heart of the board's discretion. Plaintiff grasps this quotation as an indication that section 161(5) requires just cause for nonrenewal. The Illinois case, however, was cited only for the proposition that nonrenewal decisions are not purely procedural.

a substantive right to seniority for continuing contract teachers reinforces our conclusion that the district court correctly refused to imply from those procedures a right to tenure or nonrenewal for cause only.

### III.

The language of the statute, the rejection of the tenure bills, and the recognized legislative intent to vest responsibility over choice of teaching personnel with district superintendents and boards or committees leave no place for judicial construction of a property interest based on an implied right of tenure or nonrenewal for legal cause only. We therefore hold that section 161(5) does not confer a property right upon a nonprobationary or continuing contract teacher.[18]

The judgment of the district court is affirmed.

---

**18.** Plaintiff's remaining contentions that the district court abused its discretion in limiting discovery and erred in its consideration of the testimony of various witnesses are without merit.