**Judy PARADIS**

v.

**SCHOOL ADMINISTRATIVE DISTRICT NO. 33 SCHOOL BOARD et al.**

Supreme Judicial Court of Maine.

Argued May 11, 1982.

Decided June 7, 1982.

Sunenblick, Fontaine & Reben, Stephen P. Sunenblick (orally), Howard T. Reben, Portland, for plaintiff.

Drummond, Woodsum, Plimpton & MacMahon, P. A., Hugh G. E. MacMahon (orally), Harry R. Pringle, Portland, for defendants.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

McKUSICK, Chief Justice.

In this case on appeal from Superior Court (Aroostook County), we are asked to construe the portion of 20 M.R.S.A. § 161(5) [1] that governs the elimination of

---

1. 20 M.R.S.A. § 161(5) (Supp.1981) reads in relevant part as follows:

After a probationary period of not to exceed 2 years, subsequent contracts of duly certified teachers shall be not for less than 2 years. Unless a duly certified teacher receives written notice to the contrary at least 6 months before the terminal date of the contract, the contract shall be extended automatically for one year and similarly in subsequent years although the right to an extension for a longer period of time through a new contract is specifically reserved to the contracting parties. Just cause for dismissal or nonrenewal may be a negotiable item in

accordance with the procedure set forth in Title 26, c. 9–A, for teachers who have served beyond the probationary period. After a probationary period of 2 years, any teacher, who receives notice in accordance with this section that his contract is not going to be renewed, may during the 15 days following such notification request a hearing with the school committee or governing board. He may request reasons. The hearing shall be private except by mutual consent and except that either or both parties may be represented by counsel. Such hearing must be granted within 30 days of the receipt of the teacher's request. The right to terminate a con-

teaching positions in public schools. Concluding that the court below erred as a matter of law in interpreting the statute to contain an implicit seniority principle, we remand the case for determination of the narrow question whether defendant School Board of School Administrative District No. 33 [2] (the "School Board") exceeded its statutory authority in terminating plaintiff's teaching contract.

During the 1975–76 school year, plaintiff Judy Paradis had a continuing contract with the School Board; having taught in S.A.D. No. 33 since 1969, she had long since passed her probationary period. She was one of six members of the Language Arts Department of Wisdom High School at St. Agatha in S.A.D. No. 33 and one of two French teachers there, the other being a probationary teacher.

On April 5, 1976, the School Board voted to limit its budget for the academic year 1976–77 so that the local tax effort would not have to be increased by more than two mills. The superintendent of schools accordingly prepared a budget that called for the elimination of at least two teaching positions. On May 17, 1976, Mrs. Paradis received official notice that her position would be eliminated in the next school year; and she shortly thereafter learned that the position of the probationary French teacher at Wisdom High School was to be preserved. The School Board decided on that arrangement following an executive session at which plaintiff's credentials were compared with those of the probationary teacher. There is evidence in the record that the superintendent innocently understated plaintiff's achievements during that session, but that her qualifications were, at any rate, in several respects inferior to those of the probationary teacher.[3] The voters ratified the School Board's streamlined budget sometime after Mrs. Paradis received notice that her position would be cut.

On March 3, 1979, plaintiff Paradis commenced this action[4] in Superior Court against the School Board and the Superintendent of Schools. Her complaint alleged that the elimination of her position was not warranted by a change in local conditions, such as is required by section 161(5), and that since practically all of the courses she taught in 1975–76 were maintained the next year in her absence, her position was not actually "eliminated" at all.[5]

Following a bench trial, the justice below found that "[i]t may well have been that local conditions warranted stabilization of the local tax rate, and, therefore, a reduction in the teaching staff." Nonetheless, he felt bound to enter judgment for plaintiff because of what he perceived to be the governing law: "As this Court understands Maine law, a need to reduce a teaching staff cannot be accomplished by the dismissal of [continuing contract] teachers and the retention of probationary teachers who will teach substantially the same subject matter and classes as that previously

tract, after due notice of 90 days, is reserved to the superintending school committee or school directors when changes in local conditions warrant the elimination of the teaching position for which the contract was made. A substantially identical version was in effect at the time Mrs. Paradis' position was eliminated. *See* 20 M.R.S.A. § 161(5) (1965).

2. S.A.D. No. 33 encompasses the towns of St. Agatha, Frenchville, and Sinclair.

3. Unlike Mrs. Paradis, the probationary teacher had a Master's degree, was pursuing his doctorate, and had taught French at the college level. He was also the school's soccer coach.

4. Plaintiff's collective bargaining agent has already sued unsuccessfully on her behalf. In *Board of Directors of Me. School Admin. Dist.* *No. 33 v. Teachers Ass'n of Me. School Admin. Dist. No. 33*, Me., 392 A.2d 1097 (1978), we affirmed a Superior Court order vacating an arbitrator's award to plaintiff, on the grounds that the collective bargaining agreement between the board and the teachers association forbade arbitration as a remedy for teachers aggrieved by elimination of their positions. That decision did not bar plaintiff from the judicial relief she seeks in this action.

5. Elimination of a teaching position under 20 M.R.S.A. § 161(5) (Supp.1981) is distinct from dismissal of a teacher under 20 M.R.S.A. § 473(4) (1965), which requires, at minimum, an investigation, opportunity for hearing, and written explanation of the reasons for termination.

taught by the [continuing contract] teachers." The justice concluded that plaintiff's position had not actually been eliminated, and that the purported "elimination of Mrs. Paradis' teaching position was nothing more than a poorly disguised subterfuge to allow her replacement by a probationary teacher." The Superior Court entered judgment for Mrs. Paradis in the amount of $60,991.48, and defendants took this timely appeal.

▆ At the outset, the School Board, relying upon *Colby v. York County Commissioners*, Me., 442 A.2d 544 (1982), argues that M.R.Civ.P. 80B's 30-day limit on the filing of complaints to review governmental action [6] bars Mrs. Paradis' suit, which was commenced nearly three years after the Board terminated her contract. There are indeed some facial similarities between the Paradis case now at bar and the *Colby* case brought by a deputy sheriff who had been dismissed from his job by the York County sheriff. Nonetheless, the differences are critical. Former deputy sheriff Colby had no contract for his job, and in his suit he solely attacked, for alleged irregularities, the investigation of his dismissal conducted by the York County Commissioners under a statutory requirement. Mr. Colby claimed that in their investigatory hearing the commissioners had denied him rights accorded him under the Freedom of Access Law and the Due Process Clause of both the Maine and the United States Constitution, and had lacked competent evidence to support their decision. In contrast, Mrs. Paradis framed her complaint as a conventional breach of contract action seeking monetary damages, and she brought her suit directly against the party that had contracted with her. She asserted that the School Board had committed a substantive breach of contract in at least two ways: (i) that the School Board had not in truth eliminated her teaching position, and (ii) that in any event no "changes in local conditions" within the intended meaning of section 161(5) existed to give adequate justification for the School Board to eliminate her position. She sought contract damages, not reinstatement or even back pay, as such. Her claim was subject to the six-year statute of limitation, 14 M.R.S.A. § 752 (1980), that applies in general to suits for breach of contract, including those entered into by a governmental agency. The Superior Court correctly ruled that Mrs. Paradis' contract action against her former employer was not time-barred by M.R.Civ.P. 80B(b).

Turning to the merits, we must first address the Superior Court's finding that Mrs. Paradis' position was not eliminated, for if there were no elimination, our analysis under section 161(5) is at an end. The justice below apparently based his finding on evidence in the record that most of plaintiff's courses continued to be taught after her termination, and that the major reductions in the Language Arts Department at Wisdom High School were in English courses not taught by plaintiff. More telling, however, is that the termination of Mrs. Paradis resulted in a decrease in the size of the department from six teachers to five, and that this reduced level of staffing was maintained for some time without increasing the length of the teachers' work day beyond that allowed by contract. Since, as the record reveals, Mrs. Paradis was certified as having a "minor" in English, and her contract expressly permitted the School Board "to make such reasonable changes of instructional or noninstructional assign-

6. M.R.Civ.P. 80B provides, in relevant part:
When review by the Superior Court, whether by appeal or otherwise, of any action or failure or refusal to act by a governmental agency, including any department, board, commission, or officer, is provided by statute or is otherwise available by law, proceedings for such review shall, except as otherwise provided by statute, be governed by these Rules of Civil Procedure as modified by this rule . . . .

The time within which review may be sought shall be as provided by statute, except that if no time limit is specified by statute, the complaint shall be filed within 30 days after notice of any action or refusal to act of which review is sought unless the court enlarges the time in accordance with Rule 6(b), and, in the event of a failure to act, within six months after expiration of the time in which action should reasonably have occurred.
M.R.Civ.P. 80B(a), (b).

ments as are deemed to be in the best interest of the school," she could have been assigned to teach any of the courses that were dropped. To say that when a school board eliminates a teaching position it may cut only the courses previously taught by the teacher whose contract was terminated would unwisely straightjacket school administrators. It would better serve the interests of education, while still comporting with the contractual rights of teachers, to permit the elimination of a departmental teaching position whenever a number of courses equivalent to one teacher's workload are cut from that department's curriculum.

Because that appears to be what the School Board did in this case, plaintiff's reliance on *Kenaston v. School Administrative District No. 40*, Me., 317 A.2d 7 (1974), is misplaced. In *Kenaston*, a teacher-principal was terminated, and all of his teaching responsibilities were given to another teacher. In effect, only his principalship, which had been governed by a separate contract, was eliminated. Our holding there that a teaching position was not eliminated within the meaning of section 161(5) can have no bearing here, where the equivalent of a full workload for one teacher was in fact cut out in the year 1976–77.

The Superior Court ruled as a matter of law that the School Board could not terminate a teacher under continuing contract while retaining a probationary teacher to do approximately the same work. By its terms, however, section 161(5) offers no support for such a seniority principle. That statute sets forth the distinction in treatment between the two sets of teachers by specifying the stringent procedures administrators must follow in terminating a continuing contract teacher, procedures which are not applicable to the termination of a probationary teacher. In reserving to the School Board the right to terminate a contract "when changes in local conditions warrant the elimination of the teaching po-

sition for which the contract was made," section 161(5) imposes on the Board only an implied duty to exercise that reserved power in good faith for the best interests of education in the district. A duty of good faith, both in determining whether changes in local conditions warrant elimination of teaching positions and in selecting the specific individuals whose contracts are to be terminated, is readily inferrable from the statutory reservation of power in the school directors. To go beyond that inference and declare judicially that a seniority rule restricts the school directors in the exercise of their reserved power, would be to add a substantive provision to section 161(5) that is conspicuously absent from the legislative enactment.[7]

◼ Moreover, a previous decision of this court suggests that a seniority rule would violate section 161(5). In *Board of Directors of Maine School Administrative District No. 36 v. Maine School Administrative District No. 36 Teachers Association*, Me., 428 A.2d 419 (1981) [hereinafter cited as *S.A.D. No. 36*], we rejected an arbitrator's interpretation of a collective bargaining agreement that in filling vacancies the school board had first to consider teachers already under contract and only if none of them was qualified could it look beyond the system. Section 161(5), we held, imposes on a school board a nondelegable responsibility of appointing teachers, and "[a]n agreement whereby the Board agrees to prefer potentially less qualified teachers within the system conflicts with the purpose of placing responsibility over hiring on the Board." *Id.* at 423. Without denying the significance of experience and loyal service as factors to be considered in making termination decisions, we conclude that section 161(5) does not require that probationary teachers be terminated before continuing contract teachers.

7. Twice the legislature has considered and rejected measures that would have conferred on continuing contract teachers the kind of preferential treatment the Superior Court thought mandated by law. *See* L.D. 506, 90th Me.Leg. (1941), *redrafted as* L.D. 1095, *id.*; L.D. 896, 95th Me.Leg. (1951).

Our conclusion of law does not resolve the case, however, because of the Superior Court's finding of "subterfuge." The Superior Court termed the "elimination of Mrs. Paradis' teaching position . . . nothing more than a poorly disguised subterfuge to allow her replacement by a probationary teacher." We cannot tell to what extent that factual finding grew out of the Superior Court's misapprehension as to the existence of a seniority rule. Therefore, the case must be remanded for the justice's reexamination, in light of this opinion, of the narrow question whether in Mrs. Paradis' termination the School Board's reserved power under section 161(5) was in fact exercised in good faith solely for the best interests of education in S.A.D. No. 33.

In connection with the remand, we note two points.[8] First, the statutory requirement of a change in local conditions would be satisfied if the School Board in fact determined in good faith upon the need to economize by eliminating teaching positions. Plaintiff has attacked the practical significance of several other factors urged by defendants as "changes" within the meaning of section 161(5),[9] and has argued that a mere resolve to limit the educational budget, the only remaining reason to eliminate her position, cannot rise to the level of such a change. However, the legislature has considered and rejected a bill that would have permitted elimination only "for reasons other than reasons of economy." *See* n. 7 above. And plaintiff's theory hardly comports with the policy of encouraging school boards to make personnel decisions with only the needs of their schools in mind. *See S.A.D. No. 36, supra.* Without expressing an opinion on the significance of other reasons urged by defendants for cutting plaintiff's position, we hold that a school board's decision to save money and conserve scarce educational resources by eliminating teaching positions does constitute a change warranting elimination of a teacher position under the statute.

Second, in regard to the way the School Board carried out its decision to cut teacher positions in the school year 1976–77, the implied good faith requirement would have been satisfied if the School Board picked Mrs. Paradis for termination solely on the basis of a comparison of the relative qualifications of the teachers involved, without regard to their continuing contract or probationary status. The only relevant consideration was the overall best interest of S.A.D. No. 33. *Cf. S.A.D. No. 36, supra* at 423 ("We have frequently stressed the importance to the education of our youth of . . . the selection of the best possible teachers").

The entry must be:

Judgment vacated.

Case remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

8. The School Board argues that the damages, if any, recoverable by Mrs. Paradis are limited to those suffered in the school year 1976–77 because the May 7, 1976, notice sufficed in any event as a six-month notice of nonrenewal of her contract for the year 1977–78. At this point we need express no opinion on the issue of damages.

9. Defendants cite the freeing-up of additional teacher time that came with the transition from a six- to seven-period day, a curricular decision to de-emphasize French, and declining enrollment of full-time students at Wisdom High School.