Judy PARADIS

v.

SCHOOL ADMINISTRATIVE DISTRICT NO. 33 SCHOOL BOARD, et al.

Supreme Judicial Court of Maine.

Argued May 9, 1983.

Decided June 30, 1983.

Sunenblick, Fontaine & Reben, ·Stephen P. Sunenblick (orally), Portland,. for plaintiff.

Drummond, Woodsum, Plimpton & MacMahon, P.A., Hugh G.E. MacMahon (orally), Harry R. Pringle, Portland, for defendants.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

WATHEN, Justice.

This action involving the alleged breach of a continuing contract for a public school teaching position, in contravention of 20 M.R.S.A. § 161(5) (Pamph.1982–83), is now before us on appeal for the second time. In December of 1981, the Superior Court (Aroostook County) entered judgment in favor of the plaintiff following a jury-waived trial. On appeal, this Court vacated the judgment and remanded for re-examination of "the narrow question" of whether the School Board's power to eliminate Mrs. Paradis' teaching position, "was in fact exercised in good faith solely for the best interests of education in S.A.D. No. 33." *Paradis v. School Administrative District No. 33,* 446 A.2d 46, 51 (Me.1982) [hereinafter referred to as *"Paradis I"*]. On remand, the Superior Court readopted its prior findings of fact, adopted additional findings, and reinstated the original judgment. Defendants now appeal from the reinstated judg-

ment arguing: (1) that the court erred in concluding that the Superintendent of Schools and the School Board acted in bad faith in terminating Mrs. Paradis' teaching contract; (2) that the record fails to demonstrate a causal connection between any assumed bad faith on the part of defendants and the termination of the contract; and (3) that, in any event, the court erred in awarding damages. We deny the appeal and affirm the judgment of the Superior Court.

The factual and procedural history of the litigation is somewhat lengthy and complex, but may be summarized as follows: During the 1975–1976 school year, plaintiff held a continuing contract as a teacher with S.A.D. No. 33. She had taught in the district since 1969, and in 1975–1976 she was one of six members of the Language Arts Department of Wisdom High School and one of two assigned to teach French. The second French teacher was a probationary teacher. The record reflects that plaintiff was a qualified teacher who had performed her teaching duties and assignments in a satisfactory manner. Her teaching certificates, issued by the Department of Education and Cultural Services, reflect that she had acquired a Bachelor's degree with a major in French and a minor in English. In addition, she had completed a significant part of the work required for a Masters degree in French and had studied in France and had been involved in various bilingual programs, conferences and courses.

In April, 1976, the School Board voted to limit its budget and expenditures for the next school year to a level which would result in not more than a 2 mill increase in the local tax effort. Accordingly, the Superintendent of Schools was directed to submit a program and budget proposal within that limitation. The resulting proposal called for the elimination of at least two teaching positions and the Superintendent thereupon directed his principals to recommend staff reductions. Plaintiff was one of two teachers recommended for termination by the principal of Wisdom High School.

The recommendation was allegedly made pursuant to the aim of trying to "retain a core of instructors who by training, seniority and experience are most capable of meeting student needs both in the short and long run." Prior to making his recommendation, the principal reviewed the credentials of both the plaintiff and the school's other French teacher. He stated that it was his conclusion that the probationary teacher "was better prepared in terms of delivering our needs in French and other areas" and unlike the plaintiff had a "very strong major in French" and "a solid minor in English," and an outstanding academic record. In addition, the second teacher had a Master's degree, was pursuing his doctorate, had taught French at the College level, and was also the school's soccer coach.

On April 28, 1976, plaintiff was advised by letter from the Superintendent that he was recommending the elimination of her teaching position effective at the close of the school year. The matter was placed upon the May 3rd agenda of the School Board and after being postponed, was presented for action by the Board on May 7, 1976. Plaintiff was in attendance at the meeting, but was excluded along with the rest of the public in attendance when the Board decided to meet in closed executive session to discuss the Superintendent's recommendation. Following the executive session, a public vote was taken, without discussion, which resulted in the elimination of plaintiff's teaching position. Subsequently, plaintiff was officially informed of the Board's action by letter from the Superintendent and was advised that her position would terminate 90 days hence. At no point prior to receipt of the letter of termination was plaintiff afforded a hearing or an opportunity to appear before the School Board. Despite her attendance at the meeting of the Board and various requests and inquiries made by her, plaintiff was unable to ascertain the reasons for her termination until nearly six months later upon attending an arbitration hearing regarding the elimination of her position. At that time, she heard the Superintendent testify

incorrectly that she did not have an academic major in any subject. He further testified that he had no knowledge of any studies or workshops attended by her, or any post-graduate credits earned by her. He acknowledged that he had looked only at her initial application and credentials for this information. The high school principal who had made the original recommendation to eliminate plaintiff's position testified in the present proceedings that he was unaware that plaintiff had a major in any subject and that at the time he made his recommendation he informed the Superintendent that plaintiff had no major. Neither the principal nor the Superintendent made any inquiry of plaintiff or anyone else regarding an explanation or clarification of her credentials; both were aware, however, that plaintiff's teaching certificates were on file with the administration. Plaintiff testified that she kept the administration informed of her post-graduate education since it was necessary to report any credits earned to receive cost reimbursement, and that she was unaware of the fact that her personnel file did not contain this information.

In its original decision, the Superior Court found that while local conditions may have warranted a reduction in the teaching staff, such a reduction "[could] not be accomplished by the dismissal of tenured teachers and the retention of probationary teachers who will teach substantially the same subject matter and classes as that previously taught by the tenured teachers." The Superior Court concluded that plaintiff's termination could not be equated with "the elimination of [a] teaching position for which [a] contract was made" and "was nothing more than a poorly disguised subterfuge to allow her replacement by a probationary teacher." In *Paradis I,* 446 A.2d at 50, this Court held that plaintiff's position had been eliminated within the meaning of 20 M.R.S.A. § 161(5) since "the equivalent of a full workload for one teacher was in fact cut out" for the following

year. Further, this Court ruled that, contrary to the Superior Court's statement of the law, 20 M.R.S.A. § 161(5) "does not require that probationary teachers be terminated before continuing contract teachers," but rather "imposes on the Board only an implied duty to exercise that reserved power in good faith for the best interests of education in the district." *Id.* Because this Court could not tell to what extent the factual finding of "subterfuge" grew out of the Superior Court's misapprehension of law as to the existence of a seniority rule, we remanded for re-examination of whether in fact plaintiff's termination was undertaken "in good faith solely for the best interests of education" in the district. *Id.* at 51.

Upon remand, the Superior Court addressed the question posed and specifically found "that the School Board and the Superintendent acted in bad faith when Mrs. Paradis' employment was terminated." The Superior Court reinstated the judgment previously entered and the present appeal followed.

I.

Defendants challenge the conclusion of the Superior Court that both the Superintendent and the School Board acted in bad faith in terminating plaintiff's contract. In each instance, it is argued that the court erred as a matter of law.

In its original judgment, the court made no specific finding that the Superintendent acted in bad faith in making his recommendation to the Board. On remand, however, the court found that the Superintendent did have an animus against Mrs. Paradis and did knowingly make a false representation of her qualifications to the School Board in its "executive session." In reaching this conclusion, the court relied upon and reaffirmed two previously made findings of fact and adopted for the first time on remand a third finding, which had been proposed previously by the plaintiff.[1] The court found

---

1. All findings of fact made in this case were selectively adopted, verbatim, from a list of

that in the three years subsequent to plaintiff's termination, three vacancies occurred in French positions at Wisdom High School for which plaintiff applied but was not accepted. Defendants argue that the court's finding of bad faith and intentional misrepresentation is based solely and improperly upon this latter finding, and that any inferential support drawn from it is necessarily based on either conjecture or on a misconception of the law, and that the conclusion is otherwise unsupported by the record.[2]

■ It is beyond dispute that defendants' failure to rehire the plaintiff in this case would not alone be sufficient to support the conclusion of bad faith on the part of the Superintendent. "An inference must be based on probability and not on mere possibilities or on surmise or conjecture and must be drawn reasonably and supported by the facts upon which it rests." *Ginn v. Penobscot Co.,* 334 A.2d 874, 880 (Me.1975), quoting *Manchester v. Dugan,* 247 A.2d 827, 829 (Me.1968). Nevertheless, when the trier of fact is required to probe a person's mind to determine the motivating cause of his actions, because of the absence of credible direct evidence, the use of inferences is not only appropriate but may be critically necessary. *See Maine Human Rights Commission v. City of Auburn,* 408 A.2d 1253, 1262 (Me.1979).

■ In the present case, we conclude that the finding of bad faith on the part of the Superintendent need not have rested solely upon defendants' failure to rehire plaintiff. There are other facts which provide sufficient inferential support. Of primary significance is the fact found by the trial justice that the Superintendent did understate plaintiff's credentials to the School Board, despite the ready availability to him of the true facts. Given that finding and the fact that plaintiff was a well qualified teacher who had always performed her duties satisfactorily, the defend-

ants' unexplained failure to hire plaintiff back into her position on at least three different opportunities, in context, supports a finding of bad faith on the part of the Superintendent.

■ Defendants argue, however, that there is nevertheless no basis in fact for the court's finding that the Superintendent *intentionally* misrepresented plaintiff's credentials. Defendants concede that the Superintendent's presentation of plaintiff's credentials was poorly developed, but they assert that any inference of bad faith resulting therefrom would be erroneous. We disagree. Although the Superintendent testified that he did not intentionally misrepresent plaintiff's credentials, his testimony is neither conclusive nor binding upon the court. *Qualey v. Fulton,* 422 A.2d 773, 775 (Me.1980). Such testimony should not be arbitrarily ignored without reason, but "should be carefully considered and weighed with all of the other evidence in this case, and with all of the inferences to be properly drawn from facts established by the evidence . . . ." *Id.* For example, defendants' position ignores the fact that at least some of the facts which were omitted or misrepresented were contained in the record examined by the Principal and Superintendent prior to making their respective recommendations. Moreover, as an appellate court, "we must give due regard to the fact that the . . . justice had a unique opportunity to observe the demeanor of the witness on the stand and to take account of those important testimonial subtleties unaccessible to this court in reviewing a cold transcript." *Lewisohn v. State,* 433 A.2d 351, 355 (Me.1981). In its judgment on remand, the court expressly noted that its findings were in part based on "having seen and heard the testimony of the Superintendent." It is not the function of this Court to draw its own factual inferences.

findings proposed by plaintiff's counsel. We are satisfied, nevertheless, that the court adequately performed its judicial function. *See In Re Sabrina M.,* 460 A.2d 1009 (Me.1983).

2. We reject defendants' contention that the underlying evidence of the failure to rehire was admitted for a limited purpose not herein relevant.

We conclude that the record supports the court's conclusion that the Superintendent did not act in good faith in recommending that plaintiff's position be eliminated.

## II.

■ In *Paradis I,* we remanded for re-examination "of the narrow question whether in Mrs. Paradis' termination the *School Board's* reserved power under section 161(5) was in fact exercised in good faith solely for the best interests of education in S.A.D. No. 33." *Paradis I,* 446 A.2d at 51 (emphasis added). Under section 161(5), the School Board and not the Superintendent is directly responsible for any decision to eliminate a teaching position.[3] In his order on remand, the trial justice found that the School Board as well as the Superintendent acted in bad faith when plaintiff's employment was terminated. He based his conclusion on the facts that the Superintendent presented plaintiff's credentials inaccurately and in bad faith and the Board made no independent effort to ascertain the truth regarding plaintiff's credentials, the Board made no comparison in fact of the relevant qualifications of the teachers involved, and the Board would not allow plaintiff to hear the Superintendent's presentation. The justice expanded upon his reasoning as follows:

> This Court cannot hold that a school board which acts in an area that could be disruptive of an entire career, may act on false information and without any effort to learn the truth, does so 'in good faith.'

*Paradis* does not seem to hold that a school board has the right to act arbitrarily and in bad faith when it supports a superintendent's recommendation to terminate a teacher's employment. At a minimum it would seem that a tenured teacher whose position was in jeopardy because of a proposed staff reduction should have the right to a fair and accurate presentation of that teacher's credentials. This was not done here, although it seems obvious that the best interests of education require it.

Defendants argue that the court's findings are erroneous as a matter of law and fact.

Defendants assert that there is no statutory requirement for the Board to independently investigate the relative credentials of the teachers whose positions are considered for elimination, and that the Board's failure to do so is not a proper basis from which to infer bad faith. Defendants point out the fact that section 161(5) imposes only a 90-day notice requirement for

**3.** 20 M.R.S.A. § 161(5) (Pamph.1982–83) reads in relevant part as follows:

> A superintendent of schools shall have the following powers and duties:
>
> . . . .
>
> After a probationary period of not to exceed 2 years, subsequent contracts of duly certified teachers shall be not for less than 2 years. Unless a duly certified teacher receives written notice to the contrary at least 6 months before the terminal date of the contract, the contract shall be extended automatically for one year and similarly in subsequent years although the right to an extension for a longer period of time through a new contract is specifically reserved to the contracting parties. Just cause for dismissal or nonrenewal may be a negotiable item in accordance with the procedure set forth in Title 26, c. 9–A [section 961 *et seq.*], for teachers who have served beyond the probationary period. After a probationary period of 2 years, any teacher, who received notice in accordance with this section that his contract is not going to be renewed, may during the 15 days following such notification request a hearing with the school committee or governing board. He may request reasons. The hearing shall be private except by mutual consent and except that either or both parties may be represented by counsel. Such hearing must be granted within 30 days of the receipt of the teacher's request. The right to terminate a contract, after due notice of 90 days, is reserved to the superintending school committee or school directors when changes in local conditions warrant the elimination of the teaching position for which the contract was made. In case the superintendent of schools and the superintending school committee or school directors fail to legally elect a teacher, the commissioner shall have authority to appoint a substitute teacher who shall serve until such election is made.
>
> A substantially identical version was in effect at the time plaintiff's position was eliminated. *See* 20 M.R.S.A. § 161(5) (1965).

elimination, which is distinguishable from the more exacting requirements imposed by section 161(5) with respect to the dismissal or nonrenewal of teachers. *See* 20 M.R.S.A. § 161(5). The absence of an express requirement for an independent investigation by the School Board in section 161(5) is in contrast to the express requirement for the same in section 473(4) with respect to the dismissal of teachers.[4] It is defendants' position that in the absence of a statute requiring the Board to conduct its own independent investigation and hearing on the relative qualifications of teachers, a board would not be acting in bad faith in accepting the recommendation of its superintendent with respect to which teachers' positions should be eliminated.

The judgment of the Superior Court does not impose upon the defendants a statutory duty of independent investigation. Rather, the trial justice interpreted "good faith" to include the *objective* element of reasonableness and concluded that the Board, in basing its decision on the erroneous and bad faith recommendation of the Superintendent, did not exercise reasonable judgment based upon a reasonable inquiry into the facts.

Defendants do not argue that the Court erred in analyzing the Board's action under an objective standard. Rather, they contend that a more restricted formulation of an objective standard should be employed. Defendants refer us to *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow,* the Court, recognizing the difficulty in applying a subjective standard of good faith to the conduct of public officials, adopted an objective

standard pursuant to which bad faith could be established only if the public official violated a clearly established statutory or constitutional provision. If that standard were to be applied by analogy in this case, as defendants suggest, bad faith could not be established in the absence of a violation of statute or clearly established law.

*Harlow,* however, is clearly distinguishable. The issue in that case was the scope of immunity available to senior aides and advisors of the President. Within the context of this case, the *Harlow* definition of bad faith is too restrictive. As used here in relation to a decision-making process critical to the careers of teachers which the statute, at least in part, was designed to protect,[5] the term "good faith" necessarily encompasses more than the purely legalistic reading required by defendants' tendered definition, and requires in addition that the Board must exercise its discretion reasonably and not do so arbitrarily or capriciously.

Applying that standard to the elimination of teaching positions, a fair construction of the implied good faith component of section 161(5), as recognized in *Paradis I,* would require a school board to make a reasonable inquiry prior to eliminating a teaching position. The Board made no such inquiry in the present case. Plaintiff did not receive the benefit of a fair and accurate presentation of her credentials, nor was she afforded an opportunity to challenge those representations made by the Superintendent in recommending the elimination of her position. We discern no error of law nor any clearly erroneous conclusion of fact in the trial

---

4. 20 M.R.S.A. § 473(4) (1965) provides:
   Superintending school committees and school directors shall perform the following duties:
   . . . .
   *4. Teachers dismissed.* After investigation, due notice of hearing, and hearing thereon, they shall dismiss any teacher, although having the requisite certificate, who proves unfit to teach or whose services they deem unprofitable to the school; and give to said teacher a certificate of dismissal and of the reasons therefor, a copy of which they shall retain.

   Such dismissal shall not deprive the teacher of compensation for previous services.

5. In previous cases, we have recognized that "[i]n providing a process for dismissal and non-renewal of a contract, the legislature has balanced the various interests involved in order to protect not only teachers but the public interest in insuring that children are well-taught." *Superintending School Committee of the Town of Winslow v. Winslow Education Assn.,* 363 A.2d 229, 234 (Me.1976).

justice's determination that the Board failed to exercise its power under section 161(5) in good faith.

## III.

■ Defendants next contend that plaintiff is not entitled to recover, even if the School Board acted in bad faith, unless the record demonstrates that "but for" such bad faith she would have been retained. Relying upon *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and *National Labor Relations Board v. Wright Line, A Division of Wright Line, Inc.,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982), defendants argue "that an employee cannot be placed in a better position because of the existence of an employer's motive if the end result would in any event have been the same." Applied to the present case, the argument is that plaintiff has failed to demonstrate that she would have been retained had the School Board in good faith compared her actual credentials to those of the probationary teacher.

Defendants' argument, however, fails to recognize that the instant action is one for breach of a continuing contract. Plaintiff was entitled by statute to continue to hold her teaching position until her contract was terminated by the good faith action of the School Board pursuant to section 161(5). Any termination which was brought about in the absence of good faith would result in a breach of that contract even if it could be objectively demonstrated that the same termination would have taken place in the presence of good faith. The issue in the present case is not whether the School

Board *would* have validly terminated plaintiff's contract had it acted in good faith, but rather, whether it *did* validly terminate her contract. Cases such as *Mount Healthy* and *Wright Line* involve a distinct situation in which a court is called upon to ascertain the extent of the causal link, if any, between the termination of employment and any protected conduct on the part of the employee. In *Mount Healthy,* the "but for" test is applied in an instance in which one of two reasons advanced for non-renewal of a teacher's employment was found to be violative of the protection afforded by the First Amendment to the United States Constitution. In such a circumstance, the "but for" test permits a determination of whether the same result would have occurred even in the absence of the tainted reason. Similarly, in *Wright Line,* the inquiry was whether an employee's misconduct would have resulted in discharge in the absence of protected employee union activity.[6]

In the present case, we are not concerned with the various motives of the Board members in voting for termination nor are we required to determine which of several motives might have dictated their action. Rather, we are concerned only with the question of whether the Board discharged its statutory duty to exercise good faith in selecting the specific individuals whose contracts were to be terminated. As we previously stated in *Paradis I,* 446 A.2d at 48, the sole issue is whether the School Board "exceeded its statutory authority in terminating plaintiff's teaching contract." Neither the Superior Court nor this Court has any occasion to consider whether the termination could have been achieved if the Board had acted in good faith nor would such a determination, if made, negate the breach

6. The "but for" standard has previously been applied in a similar manner by this Court in a context of employment discrimination. In *Maine Human Rights Commission v. City of Auburn,* 425 A.2d 990, 995–96 (Me.1981), the Law Court held that once it had been determined that plaintiffs had been the victims of unlawful discrimination, the burden necessarily shifted to the City to prove by clear and convincing evidence that "absent any unlawful sex

discrimination those female applicants for police jobs would not have been hired in any event." *See also Maine Human Rights Commission v. City of Auburn,* 408 A.2d 1253, 1268 (Me.1979) (inverse formulation—"plaintiff's ultimate burden of persuasion does not require her to establish that she was rejected solely because of her sex; no more is required to be shown than that sex was a 'but for' factor in her rejection").

resulting from the unauthorized termination.

## IV.

Finally, the defendants argue that the award of damages in the amount of $60,-991.48 is in error because (1) plaintiff did not mitigate damages, and (2) in no event was plaintiff entitled to more than one year of back pay. The first contention requires little discussion. The Superior Court made a factual finding that plaintiff made reasonable efforts to mitigate her damages and that finding has not been demonstrated to be clearly erroneous.

The second claim of error focuses upon the proper measure of contract damages in this particular case. The damages awarded appear to be equal to the compensation plaintiff would have received during the period from the date of her termination in 1976 to the date of judgment in 1981, deducting her actual earnings during that period. Defendants claim that the court erred in awarding plaintiff more than one year of back pay. Defendants argue that as a teacher under *continuing* contract (seeking to distinguish this case from normal contract cases such as *Winship v. Brewer School Committee,* 390 A.2d 1089 (Me. 1978)), plaintiff could have been terminated at the end of any teaching year had the Board given her six months notice that her annual salary agreement would not be renewed pursuant to the non-renewal provision of section 161(5). Defendants claim that the notice of termination received by plaintiff on May 7, 1976, even if it did not effectively *eliminate* her position, sufficed as notice of non-renewal for the year 1976–77.

▮ It is sufficient to state that the notice provided to the plaintiff did not purport to be a notice of non-renewal. The notice did not satisfy the procedural requirements of section 161(5) with respect to non-renewal. The Superior Court did not err in refusing to construe a notice of termination issued in the absence of good faith as a notice of non-renewal. There is no evidence in the record before us which suggests that plaintiff's contract would not have been renewed in the absence of the ineffective attempt to eliminate her position.

The entry is:

Judgment affirmed.

All concurring.